**Kenneth JANIUK, Plaintiff–Appellant,**

v.

**TCG/TRUMP COMPANY, formerly known as The Trump Company, Defendant–Appellee.**

No. 97–3262.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1998.

Decided Oct. 2, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 8, 1998.

Robert M. Mihelich (argued), Olson & Associates, New Berlin, WI, for Plaintiff–Appellant.

David B. Kern, Michael M. Grebe (argued), Quarles & Brady, Milwaukee, WI, for Defendant–Appellee.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

After his discharge from The Trump Company, Kenneth Janiuk sued his former employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., alleging that his termination was the result of unlawful age discrimination. The district court granted Trump's motion for summary judgment, finding that Janiuk had failed to come forward with evidence from which a reasonable jury could conclude that Trump had treated younger employees more favorably than Janiuk, or that Trump's stated reason for Janiuk's discharge was a pretext for age discrimination. Janiuk challenges those determinations here, and after careful consideration of the record, we agree with Janiuk that summary judgment was improper. We therefore reverse the district court's judgment for Trump and remand for a trial.

## I.

■ Because the district court resolved this case on summary judgment, we describe the factual record in the light most favorable to Janiuk. See Jones v. Webb, 45 F.3d 178, 180 n. 1 (7th Cir.1995). At the time of the relevant events, Trump was engaged in the food brokerage business, meaning that it contracted with food product manufacturers to distribute their products to various customers, including retail outlets.[1] Trump maintained a sales department to service these retail outlets, and that department was divided into four divisions. The two divisions relevant here are those that serviced independent retail outlets and chain retail outlets. At the time of his termination, Janiuk was the sales manager for the independent outlet division, which meant that he was in charge of managing Trump's sales to independent retail outlets. As sales manager, Janiuk supervised sales representatives assigned to the independent outlet division, as well as that division's three area managers. Jean Bodart, who was approximately two years older than Janiuk, served as the sales manager for Trump's chain outlet division, and

---

1. In January 1996, approximately nine months after Janiuk's termination, Trump merged with Thompson-Clark-Garritsen Company, Inc. to form TCG/Trump Company, which, as the successor to Trump, is the current defendant here.

she had responsibilities similar to those of Janiuk, but with respect to chain retail outlets. Both Janiuk and Bodart were supervised by Robert Prater, the vice president of Trump's retail sales operations.

In January 1995, Trump lost one of its largest accounts, Van den Bergh Foods, as well as two smaller accounts. The Van den Bergh Foods account, which had been serviced by both the independent and chain divisions, had generated approximately eight percent of Trump's annual revenue. In response to the loss of these accounts, Trump's five shareholders concluded that the company had to reduce its operating expenses. The shareholders ultimately decided upon three ways for it to do so: (1) by cutting their own salaries ten percent, (2) by not replacing two employees who recently had resigned, and (3) by eliminating five existing employees. Janiuk was one of the five selected for termination. He was forty-five years old at the time and was the highest ranking employee among the five. The others were Al Cieminski, a fifty-five-year-old account manager, Todd Glasscock, a fifty-four-year-old account manager, Joe Rozum, a twenty-eight-year-old sales representative, and Colleen White, a twenty-nine-year-old administrative assistant. Less than a week after implementation of this reduction-inforce ("RIF"), however, Trump rehired Rozum to a part-time position, and within another two weeks to a full-time position as a convenience store sales representative.

Trump maintains that in choosing to terminate Janiuk, it decided to do without a sales manager for its independent outlet division. One of its other sales divisions also operated without a sales manager. Thus, according to Trump, the company selected Janiuk's position for elimination, rather than Janiuk himself. In the view of Trump's five shareholders, elimination of Janiuk's position would least disrupt the company's ongoing operations because the responsibilities of the sales manager position could be divided amongst other employees.

Yet Janiuk believes that his former position was not eliminated, but that he effectively was replaced in that position by Steve Kalk, one of the three area managers he had supervised.[2] To support that theory, Janiuk relies on an organizational chart of the independent outlet division's sales force which indicates that Kalk became the division's sales manager after Janiuk's termination. That chart, which the parties refer to as the "Kalk chart," came into existence only days after Janiuk's February 28, 1995 termination. The organizational chart that preceded it showed Janiuk as the division's sales manager and Kalk as an area manager. It is undisputed that Trump regularly created and maintained such organizational charts for its various sales divisions. The charts were created by employees of Trump's marketing department at the direction of Trump management, and the company used the charts both for internal purposes and for external sales presentations. The record reveals that Trump used the Kalk chart, like its other organizational charts, in both ways. Prater, for example, showed the Kalk chart to Kalk himself shortly after Janiuk's termination, apparently for the purpose of explaining to Kalk some of his new responsibilities in the wake of Janiuk's dismissal. Prater also displayed the Kalk chart on an overhead projector to Trump's entire retail sales staff during a March 3, 1995 sales meeting. Furthermore, Trump employees, including two of its shareholders, used the chart in at least one sales presentation—to Reynolds Aluminum, a potential Trump client.

Trump argued below that the Kalk chart does not create a factual issue on summary judgment because the record reveals that the chart was incorrect in indicating that Kalk had assumed Janiuk's former position as sales manager. According to Trump, the record demonstrates that Prater ordered the chart corrected shortly after he noticed the mistake. The district court accepted that explanation in granting summary judgment for Trump, observing that "all of the competent testimony establishes that the Kalk chart was incorrect." (R. 29, at 8.) The court therefore found that Janiuk had failed to make out a prima facie case of discrimination because he had not shown that similarly-situated, younger employees were treated

---

2. Kalk was approximately ten years younger than Janiuk.

more favorably in the RIF. The court alternatively found that even if a prima facie case had been shown, Janiuk had failed to raise any doubts about Trump's stated reason for his termination.

██ Janiuk challenges both findings in this appeal, arguing that the summary judgment record raises disputed issues of material fact as to whether similarly-situated, younger employees received more favorable treatment, and as to whether Trump's stated reason for Janiuk's termination was pretextual. Our review of the district court's summary judgment decision is de novo. *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 791–92 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). At this stage of the proceeding, we must view the record in the light most favorable to Janiuk and draw all reasonable inferences from the evidence in his favor. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996).

## II.

██ The shifting burdens of proof and production in employment discrimination cases have become so familiar that detailed reiteration is not required here. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Suffice it to say that when the discrimination is alleged to have occurred in the context of a reduction-in-force, the plaintiff's initial burden is to show that (1) he was in the protected age group; (2) he was performing to the employer's legitimate expectations; (3) despite his performance, he was discharged; and (4) substantially younger employees who were similarly situated were treated more favorably. *Testerman v. EDS Technical Prod. Corp.*, 98 F.3d 297, 303 (7th Cir.1996); *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995). Once the plaintiff satisfies that initial burden, the employer

must come forward with a legitimate, nondiscriminatory reason for the adverse employment action, and if it does, the plaintiff then bears the ultimate burden of showing that the proffered reason is a pretext for age discrimination. *See Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1404 (7th Cir. 1996). At the summary judgment stage, the plaintiff satisfies that burden and thus raises a disputed issue of material fact for trial if he produces evidence from which a reasonable jury could conclude that the stated reason is false—in other words, that it is a phony reason. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). By doing so, the plaintiff successfully raises an inference that the employer's actions were the product of unlawful discrimination, entitling him to a jury determination on that issue. *Testerman*, 98 F.3d at 303; *Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 681–82 (7th Cir.1996); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994); *Shager v. Upjohn*, 913 F.2d 398, 401 (7th Cir.1990).

██ Although at trial, the parties no doubt will emphasize various other evidence as well, our inquiry at this stage may be limited to the accuracy of the so-called "Kalk chart." In our view, it would be enough to defeat Trump's summary judgment motion if Janiuk could raise an issue of fact as to whether the Kalk chart accurately reflected the organization of Trump's independent outlet division after the RIF. That is so because if a reasonable jury could conclude that the Kalk chart was accurate, the crucial finding that Kalk replaced Janiuk as the division's sales manager could be made as well. That finding, in turn, would entitle the jury to conclude that Trump treated a similarly-situated, younger employee (Kalk) more favorably than Janiuk,[3] and that Trump's stated reason for Janiuk's termination—that his position was elim-

---

**3.** Preliminarily, we must reject Trump's assertion that Janiuk and Kalk were not "similarly situated" for purposes of the fourth element of the prima facie case. Prior to Janiuk's termination, Kalk was an area manager who was supervised by Janiuk, the independent outlet division's sales manager. If Kalk was elevated to the sales manager's position after Janiuk's termination, then the two men were indeed similarly situated for

purposes of Janiuk's prima facie case. That would also be the case if Kalk did not actually become the sales manager but merely assumed a significant portion of Janiuk's former responsibilities. *See Collier v. Budd Co.*, 66 F.3d 886, 890–91 (7th Cir.1995); *see also Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995).

inated in connection with the RIF—was false.

As it did in the district court, Trump asserts that the Kalk chart should be disregarded because the record demonstrates that it is indisputably inaccurate. The district court accepted that assertion, finding that "all of the competent testimony establishes that the Kalk chart was incorrect." (R. 29, at 8.) With the utmost respect for our colleague in the district court, however, we must disagree, for our own review of the summary judgment record reveals evidence from which a reasonable jury could conclude that the Kalk chart was accurate. We therefore find the issue to be inappropriate for summary adjudication.

As Trump is quick to point out, its vice president of retail sales in fact testified that the Kalk chart was incorrect and that he ordered the chart corrected shortly after noticing the mistake. Prater explained in his deposition that he initially had asked Jean Volmer of Trump's marketing department to create a new organizational chart after Janiuk's termination. Volmer proceeded to produce the Kalk chart, although Prater now says that he never directed Volmer to elevate Kalk to the sales manager's slot and that she must have assumed on her own that Kalk had been promoted. Prater testified that he noticed the mistake and that he asked Volmer to correct it, telling her that Kalk would not be assuming Janiuk's position as sales manager. Prater indicated that the Kalk chart then was corrected in short order, as he had directed.

Volmer has a starkly different recollection of those events, however. She explained in an affidavit submitted with Janiuk's response to the summary judgment motion that Prater brought her a copy of the independent division's organizational chart on March 1 or 2, 1995. Prater had made handwritten notations on the chart to reflect that division's recent personnel changes, and he asked Volmer to incorporate the handwritten changes into the chart. One of those handwritten changes was the insertion of Kalk's name into the sales manager's slot. Volmer proceeded to input the changes, printed out the revised chart, and gave it to Prater. With respect to whether Prater ever noticed a mistake in the chart and asked her to correct it, as Prater has asserted in this litigation, Volmer had the following to say:

7. At no time after I created the revised retail organizational chart [the Kalk chart] as instructed by Prater, did Prater give it back to me and indicate to me that it was incorrect in any manner or regard because it showed that Steve Kalk had replaced Ken Janiuk as the Independent Retail Sales Manager for the Trump Company.

8. At no time after I created the revised sales force organization chart did Bob Prater instruct me to change the chart by deleting Steve Kalk's name from the chart at the position of Independent Retail Sales Manager.

9. The revised retail organization chart remained the same from the time that I made the changes as requested by Bob Prater in March 1995, until the time that The Trump Company merged with TCG, in or around January, 1996.

(R. 22.) Moreover, although Prater maintains that he asked Volmer to correct the Kalk chart and that she promptly did so, Trump was unable to produce the corrected chart in this litigation. In our view, a reasonable jury could conclude from Volmer's testimony and from the absence of the allegedly corrected chart from the record that Prater's assertions about the inaccuracy of the Kalk chart are not credible.

Such a conclusion would be further supported by the uses Prater himself made of the Kalk chart before it allegedly was corrected. Prater showed the chart to Kalk shortly after Janiuk's termination, apparently for the purpose of explaining some of Kalk's new responsibilities; he displayed the chart to the entire retail sales staff during a sales meeting just days after Janiuk's termination; and he, along with two of Trump's shareholders, used the chart in a presentation to a potential customer. A jury certainly could conclude that such uses of the chart are inconsistent with Trump's assertion that the chart was incorrect. A reasonable jury could thus conclude from this and the other evidence we have discussed that the Kalk chart was accurate and that Kalk assumed

the position of sales manager in the wake of Janiuk's termination.[4]

Because a reasonable jury could conclude that Kalk replaced Janiuk as the independent division's sales manager, summary judgment for Trump was improper. With respect to the prima facie case of age discrimination, the jury could conclude that Trump treated a similarly-situated, younger employee more favorably than it treated Janiuk—according to the Kalk chart, Trump replaced the substantially older employee with the younger, a paradigm example of the fourth element of such a case. The jury similarly could conclude that Trump lied in asserting that it eliminated Janiuk's sales manager position in connection with the RIF. The Kalk chart suggests that the position itself remained—only Janiuk did not. A jury must therefore resolve the question of whether Trump actually eliminated Janiuk's position and assigned his responsibilities to various other employees, or whether it terminated Janiuk himself and elevated Kalk to the position of sales manager. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir.1997); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir.1996); *Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 105–06 (2d Cir.1989). That dispute cannot be resolved at the summary judgment stage.[5]

### III.

For the foregoing reasons, we reverse the summary judgment entered for Trump below and remand the case for a trial.

REVERSED AND REMANDED.

4. Although not directly addressing the Kalk chart, Trump's Chief Financial Officer testified in deposition that after Janiuk's termination, he thought of Kalk and Jeanne Bodart as being on the same level. Bodart was the sales manager of Trump's chain outlet division.

5. Our dissenting colleague asserts that Janiuk failed to raise an issue of fact as to pretext because he produced no evidence "from which a rational jury could infer that Trump was untruthful about its financial instability and its need to reduce operating expenses" in the wake of the loss of the three accounts. *Post* at 511. Yet we do not believe that is the proper focus for the pretext inquiry in these circumstances. It indeed is undisputed that Trump decided to reduce its work force in order to reduce its operating expenses, but the decisions made in connection

BAUER, Circuit Judge, dissenting.

The majority opinion sets forth the elements of a prima facie age discrimination case and the shifting burdens of proof and production necessary for Janiuk's claim to survive summary judgment. The majority limited the inquiry to the accuracy of the Kalk chart and flatly rejected Trump's assertion that Janiuk and Kalk were not similarly situated for purposes of the fourth element of the prima facie case, ultimately finding that "the record reveals evidence from which a reasonable jury could conclude that the Kalk chart was accurate" thereby precluding summary judgment. I believe the majority's focus to be misplaced, its scope too narrow, and I respectfully dissent.

While it is undisputed that Janiuk satisfies the first three elements of the prima facie case for age discrimination, this court has recognized the need for flexibility in establishing such prima facie case. "[I]t is a flexible standard that 'is not intended to be rigidly applied.'" *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir.1995) (internal citation omitted). The prima facie case, particularly the fourth prong, must be adapted to the differing factual circumstances that give rise to discrimination claims. In reduction-in-force cases, this court has held that the fourth element of a prima facie case for age discrimination is not that the employee was replaced by a younger employee but that similarly situated younger employees were

with that reduction-in-force still must comply with the ADEA. *See, e.g., Collier*, 66 F.3d at 892–93; *Oxman v. WLS–TV*, 846 F.2d 448, 455 & 456–57 (7th Cir.1988). The relevant decision here relates not to the reduction-in-force itself, but to the alleged decision to eliminate Janiuk's position as sales manager for the independent outlet division in connection with that reduction-in-force. In our view, Janiuk has raised a genuine issue of material fact with respect to the truthfulness of Trump's assertion that it decided to eliminate his position. He has produced evidence from which a reasonable jury could conclude that his position was not in fact eliminated, but that a substantially younger employee was chosen to replace him in that position. That evidence requires a trial despite the fact that there is no dispute that Trump indeed reduced its work force in response to a loss of revenue.

treated more favorably. *Id.* at 890–91; *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995).

Trump disputes the accuracy of the Kalk chart; Janiuk relies on it to argue that Steve Kalk in fact replaced Janiuk as the sales manager of the independent outlet division. The majority finds that Janiuk presented sufficient evidence to demonstrate that there is a triable issue of fact as to accuracy of the Kalk chart and whether Kalk assumed the position of division sales manager after Janiuk's termination, thereby creating an inference that Trump's actions were motivated by a discriminatory intent. The mere existence of a factual dispute between the parties does not defeat an otherwise properly supported motion for summary judgment. *McGinn v. Burlington Northern R. Co.*, 102 F.3d 295, 298 (7th Cir.1996). An essential consideration in evaluating the fourth element is not that younger employees were treated more favorably but that *similarly situated* younger employees received favorable treatment. The fact that an employer retains younger employees is not enough; those younger employees must be similarly situated with the plaintiff. *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1333 (7th Cir.1995).

Janiuk's reliance on the Kalk chart is misplaced; as a threshold matter, the record demonstrates that Kalk was not similarly situated with Janiuk. Instead, the record shows, and Janiuk admits, that Jeanne Bodart was his counterpart as the sales manager for Trump's chain outlet division and that Steve Kalk was simply an area manger under Janiuk's supervision. (R. 127). After Janiuk's termination and the company's reorganization, Trump assigned and delegated Janiuk's responsibilities among various employees, including persons both older and younger than Janiuk. In fact, Kalk testified in his deposition that to his knowledge no one ever replaced Janiuk. (R. 162). Although Kalk admitted that he assumed some of Janiuk's responsibilities, he also acknowledged that Trump assigned some of Janiuk's previous responsibilities to Bob Prater and Jeanne Bodart. (R. 139, 140). In addition to Kalk, Prater and Bruce Milne also provided deposition testimony that Kalk did not re-

place Janiuk. (R. 186, 188, 198). Notwithstanding the Kalk chart, the record reveals that Janiuk did not receive less favorable treatment than younger employees; rather, employees not in the protected age group were terminated along with Janiuk as the result of Trump's reduction in force in addition to the fact that both younger and older employees assumed some of Janiuk's previous responsibilities.

I hesitate to join an opinion that would force companies to pause before eliminating a particular position in its corporate structure based on legitimate business reasons for the sole reason that the employee in the eliminated position is protected by the ADEA; employers should not be forced to make decisions that are not the ideal management choices (assuming, of course, that they are legitimate, nondiscriminatory decisions) based solely on a desire to avoid discrimination claims. Furthermore, I believe that an employer should not be subject to liability for age discrimination claims because, after a legitimate reduction in force, it assigns the duties and responsibilities of a discharged employee to persons both older and younger than that discharged employee. In my opinion, Janiuk failed to establish a prima facie case for age discrimination, and summary judgment was appropriate.

Even more, assuming *arguendo* that Janiuk established a prima facie case of age discrimination, he nonetheless failed to demonstrate that Trump's proffered reasons for his discharge were pretextual. The production of a prima facie case simply creates a "legally mandatory, rebuttable presumption" of discrimination. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The employer must then come forward with a legitimate, nondiscriminatory reason for the adverse employment action; an employer needs only one legitimate reason to succeed on summary judgment. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995). Once the employer provides its reasons, the burden ultimately shifts to the plaintiff who must demonstrate that the proffered reasons are a pretext for discrimination. We need

not look far to see that Janiuk has not met this burden.

Trump explained that its ultimate decision to eliminate Janiuk's position, along with the four other positions, was based on the loss of one of its largest accounts (in addition to two smaller accounts) and an overall loss of revenue. The record indicates that the shareholders' decision was to reduce operating costs by eliminating positions that would be least disruptive to the corporate structure and its daily operations, which had nothing to do with age or the status of particular employees in those positions. (R. 113, 167). Business decisions, such as a reduction in force to offset a loss of revenue, are judgments within the discretion of management best left to the employer, without a judicial disruption of the corporate structure or a second-guessing of an employer's reasoned and informed decisions.

This court has established that it "'does not sit as a super-personnel department that reexamines an entity's business decisions.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 400 (7th Cir.1997) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986)). An employer retains the authority and discretion to determine how and where to achieve necessary cost savings, and Trump's shareholders determined that a reduction in its operating expenses, which included the elimination of certain positions, was the solution. Such decisions are legitimate business and economic reasons for the adverse employment action, which satisfied Trump's burden of production. Janiuk now must produce enough evidence from which a reasonable factfinder could infer that Trump's proffered reasons for his termination are false and not worthy of credence. *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir.1994). The key inquiry here is whether Janiuk produced sufficient evidence from which a rational jury could infer that Trump was untruthful about its financial instability and its need to reduce operating expenses to accommodate the loss in revenue. Where an employer advances specific reasons for an employment decision, rebuttal evidence should focus on those reasons. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir.1994). Janiuk fails to present any evidence calling into doubt either Trump's financial concerns or its loss in revenue; he merely repeats that Trump's proffered reasons for his discharge are pretextual because after the reduction in force, Kalk assumed Janiuk's position as the independent division sales manager, as illustrated by the Kalk chart. That is not enough.

Trump's business decision, whether good or bad, was premised on an evaluation of its financial instability and its ultimate conclusion that the elimination of the sales manager position in the chain outlet division, in addition to four other positions, would be the least disruptive to its routine operations. We do not evaluate the wisdom of the employer's decision, but rather the genuineness of its motives. *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992). Our task is to determine "'whether the employer gave an honest explanation of its behavior.'" *Chiaramonte*, 129 F.3d at 400 (quoting *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987)). Even if Trump misjudged that the elimination of the division manager position would be one of the least disruptive changes, that miscalculation is insufficient to present a jury question as to pretext, particularly when there is no evidence that age was the discriminatory animus; summary judgment was appropriate.

In its reorganization, Trump retained employees in the protected age group and terminated employees who were younger than Janiuk. The record does not reveal any evidence from which a reasonable jury could infer that age, and not Trump's financial instability, motivated its reduction in force; there is no indication that age played any role in its decision. Trump gave equal consideration to all its employees. Janiuk cannot simply substitute his own judgment for that of Trump's, and I believe that a reasonable jury could not conclude that Trump's loss of revenue and its need to reduce operating expenses are not the actual reasons for its reduction in force.

For these reasons, I would affirm the district court's grant of summary judgment.