In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2275

DEBRA KRCHNAVY,

*Plaintiff-Appellant,*

*v.*

LIMAGRAIN GENETICS CORPORATION
a/k/a LG SEEDS INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00-C-445-C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED NOVEMBER 30, 2001—DECIDED JUNE 24, 2002

Before FLAUM, *Chief Judge*, CUDAHY, and MANION, *Circuit Judges.*

CUDAHY, *Circuit Judge.* In August 1999, Limagrain Genetics Corp. (LG Seeds) terminated Debra Krchnavy, a 44-year old woman, as part of a reduction-in-force (RIF). Shortly thereafter, some of her former duties were taken over by a different LG Seeds employee, who happened to be a 34-year old male. Krchnavy sued her former employer alleging discriminatory discharge in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* (sex discrimination). The District Court granted summary judgement for LG Seeds on all claims. Because

Krchnavy has not carried her burden of showing that LG Seeds' legitimate, nondiscriminatory reason for her termination was pretextual, we affirm.

I.

LG Seeds, a subsidiary of Limagrain Genetics Corporation, processes farm seed for sale to farmers and dealers. Prior to 1999, the operations of LG Seeds included four regional service centers, which were each comprised of a sales office and a product warehouse. These centers were located in Tecamah, Nebraska; Mt. Pleasant, Iowa; Windfall, Indiana; and Prescott, Wisconsin. The Prescott facility, where plaintiff Debra Krchnavy worked, had four full-time employees: Krchnavy; Rich Cobian, a warehouse worker and sales assistant; Craig Anderson, the office supervisor; and John Squire, a sales agronomist. Krchnavy was the only female in the office, and her status as the oldest employee was common knowledge.

Krchnavy's employment with LG Seeds began in March 1995, when she was hired as a part-time employee. She was transferred to full-time status in June of 1995 and given the job title "Sales/Administrative Assistant-Office Manager." In this position, Krchnavy's job responsibilities included customer service and administrative work. Her customer service work included responding to customer and employee inquiries; preparing product comparisons; furnishing sales reports; planning promotional trips; and assisting Anderson with sales and marketing activities. The administrative work included the preparation of billing and accounting statements, which encompassed the preparation of accounts receivable and payable statements; making bank deposits; handling mail; tracking inventory; and the setting up and maintenance of an office computer system and software.

In 1995, LG Seeds hired Rich Cobian as a "Sales and Administrative Assistant-Warehouse and Shipment Coordina-

tor." In this position, Cobian's responsibilities varied depending on the season. During the shipping season from January to July, Cobian spent the majority of his time performing warehouse tasks, which included the loading and unloading of inventory; the organization and scheduling of deliveries; the maintenance of inventory levels on LG Seeds' computer system; and the taking of orders directly from customers. During the nonshipping season from July to December, Cobian delivered advertisements; prepared literature; attended promotional events; assisted dealers and customers with seed-related issues; and assisted Squire in the preparation of product reports. In addition, Krchnavy trained Cobian to do her work in case she was absent.

In 1999, LG Seeds merged corporately and operationally with Akin-Callahan, Inc. Shortly thereafter, LG Seeds initiated a reorganization of its personnel, which it dubbed the VEGA project. This reorganization was carried out at the corporate level, and according to the record, none of Krchnavy's coworkers or supervisors participated in reorganization decisions. The members of the VEGA project team, who directed the reorganization, were company executives at locations other than Prescott. The goal of the reorganization was to make operations more efficient and profitable. As part of the VEGA project, LG Seeds decided to consolidate its operations by closing four service centers and centralizing its accounting and customer service functions. Bruno Carette, who was part of the VEGA project team, gave Barbara Wittig, Director of Human Resources for LG Seeds, the task of determining which positions were properly included within customer service, a category which encompassed data entry, accounting and bookkeeping.

From late June though mid-July 1999, Wittig identified several employees who fitted within the customer service category. Ultimately, the VEGA project team concluded that

the customer service duties of Krchnavy, along with several other LG Seeds employees, should be consolidated at one facility in Elmwood, Illinois. There are no allegations nor evidence that Krchnavy's job performance was a factor in LG Seeds' termination decision. In total, the VEGA project resulted in the termination of forty-five employees. The reorganization included the closure of the Prescott, Windfall, Tekemah and Mt. Pleasant service centers. At the Tekemah and Mt. Pleasant facilities, LG Seeds terminated all of its employees. At the Windfall facility, the company transferred its employees to a facility in Westfield, Indiana. The Prescott facility was the only location at which the employment decisions were mixed; Krchnavy was terminated while Anderson, Cobian and Squire remained with the company.

In August of 1999, Roger Bonsack, Anderson's supervisor, informed Anderson of some the details of the VEGA project, including the decision of LG Seeds to close the Prescott facility and to relocate many of its functions to Elmwood. Because the reorganization included the consolidation of accounting functions, Anderson was told that Krchnavy's employment was being terminated. During this conversation, Anderson was also informed that Cobian would not be part of the reduction in staff. Although Cobian's status was not specifically discussed, Anderson knew that Cobian would have to be assigned some different duties.

On August 16, 1999, Anderson informed Krchnavy that LG Seeds was closing the Prescott facility and terminating her. During this conversation, Krchnavy alleges that Anderson told her that Squire and he would probably work out of their homes, and that Cobian's position had also been eliminated. At about the same time that Krchnavy was informed of her termination, Anderson told Cobian that LG Seeds intended to eliminate his current position, but that he would remain employed by LG Seeds. Within the next

few months, LG Seeds made a decision to open another facility in River Falls, Wisconsin. Although Anderson did not participate in the decision of the VEGA project team to terminate Krchnavy's employment, he did participate in the decision to transfer Squires, Cobian and himself to River Falls.

Sometime after her termination but before the closure of the Prescott facility, Krchnavy alleges that several events took place that led her to doubt the truthfulness of Anderson's explanation of her discharge. First, Cobian had given her contradictory accounts of his employment status. Originally, he told her that LG Seeds was eliminating the warehouse duties of his job, which lead Krchnavy to assume that Cobian was going to be terminated. However, Cobian later informed her that he had been offered a new job doing the same type of work as a sales assistant and that he was taking over some of her former responsibilities. Second, shortly after Krchnavy's termination, her husband went to her office to retrieve some of her belongings. While at the office he had a conversation with Squire in which Squire told him that Cobian was "taking over Debra's job." Third, Krchnavy's husband saw Cobian using her former office.

In November 1999, Cobian, Anderson and Squire moved into the new office in River Falls. Customer service duties, such as accounting, invoicing and order entry, were no longer being performed on site. These tasks were done at the Elmwood facility by 37-year old Sally Coulter. However, some customer service duties at the new office were shifted to Cobian, such as answering questions and filling supplemental orders. In December 1999, Rich Cobian's title was changed to "Administrative Assistant/Marketing Support," in keeping with the fact that he no longer had substantial warehouse duties. Because the River Falls facility had a small seed storage facility that was used to supplement customer orders, Cobian did retain some minimal ware-

house duties. During the shipping season, Cobian's new job required him to coordinate inventory, operate the seed storage facility and address other customer needs. During the non-shipping season, Cobian's new position required him to post signs in fields, attend promotional events, answer customer inquiries, perform office upkeep and work on product reports.

Although Cobian's duties included some of the duties that Krchnavy previously performed, Cobian did not perform Krchnavy's former customer service functions of accounting, invoicing, entering orders or communicating with customers about accounting issues. Again, these duties were now being handled at the Elmwood facility. Yet, from Krchnavy's perspective, it appeared that she had been replaced by another employee who was both ten years younger than she and male. Krchnavy therefore filed charges of gender and age discrimination with the EEOC. On two separate occasions, Wittig responded to an EEOC inquiry using information supplied in part by Anderson and Ed Germain, a member of the VEGA project team. On January 4, 2000, Wittig informed the EEOC that LG Seeds did not discriminate against Krchnavy with respect to her termination; LG Seeds eliminated Krchnavy's position due to a company-wide reorganization plan, and Cobian was not a customer service representative. Thus, LG Seeds did not eliminate his position. On January 20, 2000, Wittig informed the EEOC that, although Cobian performed a slight portion of Krchnavy's former duties, LG Seeds transferred Cobian, instead of Krchnavy, to the River Falls location because the "majority" of Cobian's previous duties had to be performed in Wisconsin, while Krchnavy's duties were transferrable to the Elmwood facility.

After obtaining a right-to-sue letter from the EEOC, Krchnavy commenced the current action in federal court. The district court subsequently granted summary judgment to LG Seeds on all claims. Although the district court found

sufficient evidence to constitute a *prima facie* case of age and gender discrimination, the court granted summary judgment to LG Seeds because Krchnavy failed to put forward evidence that LG Seeds' proffered reason for her termination (the VEGA project reorganization) was a pretext for gender and/or age discrimination. Krchnavy now appeals.

## II.

We review de novo the district court's grant of summary judgment. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009 (7th Cir. 2000). In doing so, we view the record in the light most favorable to Krchnavy, drawing all reasonable inferences in her favor. *See id.*; *Krocka v. City of Chicago*, 203 F.3d 507, 513 (7th Cir. 2000). Summary judgment is appropriate only when no genuine issue of triable fact exists regarding a material issue. *See Paluck*, 221 F.3d at 1009; *Krocka*, 203 F.3d at 513. We apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on issues of intent and credibility. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir. 2000); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir. 1996). However, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Krchnavy alleges that LG Seeds terminated her employment because of her age and gender, in violation of the ADEA and Title VII. *See* 29 U.S.C. § 623(a)(1) (age); 42 U.S.C. § 2000e-2(a) (gender). Unlawful discrimination may be proved though direct evidence of impermissible motive, or indirectly by the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). *See Bellaver*, 200 F.3d at 492-493. The *McDonnell Douglas* framework applies to both

Title VII and ADEA claims. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (age and sex discrimination); *Paluck*, 221 F.3d at 1009-11 (age and sex discrimination). Krchnavy relies on the indirect method, which requires her to establish the four distinct elements of a *prima facie* case: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *O'Regan*, 246 F.3d at 983.

Because unlawful discrimination can occur in a variety of employment contexts, "we have adapted the requirements for making a *prima facie* case in special cases to reflect the reality of the workplace." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). In the traditional RIF case, an employer permanently eliminates a position from the workplace. *Bellaver*, 200 F.3d at 494. However, in a mini-RIF, such as this case, employees remaining at the company absorb the duties of their former co-workers. *See Michas*, 209 F.3d at 693 (noting that in a mini-RIF, a single employee is discharged, not replaced, and his responsibilities are assumed by other members of the workforce); *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995) (same). In a mini-RIF, we require "that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class." *Michas*, 209 F.3d at 693; *see also Bellaver*, 200 F.3d at 495.

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. If such a reason is proffered, the plaintiff then bears the ultimate burden of showing that it is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Michas*, 209 F.3d at 692-93. To

show pretext in a RIF case, an employee must establish that an improper motive "tipped the balance" in favor of discharge. *Testerman v. EDS Tech. Products Corp.*, 98 F.3d 297, 303-04 (7th Cir. 1996) (quoting *Umpleby v. Potter & Brumfeld, Inc.*, 69 F.3d 209, 213 (7th Cir. 1995)). It is insufficient "for the employee to show that the employer acted incorrectly or undesirably by firing him"; instead, "the employee must show that the employer did not honestly believe in the reasons it gave for firing him." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996).

For the purposes of this appeal, LG Seeds concedes that Krchnavy has established a *prima facie* case of age and sex discrimination.[1] However, LG Seeds argues that the implementation of a RIF pursuant to the VEGA projection reorganization plan is a legitimate, nondiscriminatory reason for Krchnavy's termination. The RIF plan mandated the closure of several facilities and the consolidation of the customer service functions of accounting, invoicing, and order entry at the Elmwood facility. LG Seeds asserts that it discharged Krchnavy because her job responsibilities satisfied the predetermined criteria established by the VEGA project.

Although Krchnavy concedes that the VEGA project might be, in theory, a legitimate reason for her termination, she argues that false and inconsistent statements by LG Seeds officials are strong evidence of pretext. For example,

---

[1] LG Seeds argued to the district court that Krchnavy failed to establish the fourth prong of the *prima facie* case because Krchnavy's "principal" duties were in reality absorbed by 37-year-old Sally Coulter rather than 34-year-old Rich Cobian. However, the district court rejected this argument because a portion of Krchnavy's former job duties were now being handled by Cobian. Although LG Seeds briefly reasserts this argument on appeal, the focus of its brief is that its reason for terminating Krchnavy (the VEGA project) was not a pretext for unlawful discrimination.

when Krchnavy's former supervisor, Craig Anderson, informed her that she would be terminated, Anderson did not truthfully describe how the reorganization would affect Squire, Cobian and himself, nor did he inform Krchnavy of any plans to open another LG Seeds facility in River Falls. Similarly, when LG Seeds' human resource manager, Babara Wittig, responded to inquiries from the EEOC, her letters contained factual inaccuracies regarding the scope of Cobian's duties before and after the reorganization.

Yet, as LG Seeds correctly points out, there is nothing in the record to suggest that either Anderson or Wittig participated in the decision to terminate her employment. An inference of pretext may be permissible only when *decisionmakers* make false or inconsistent statements about the circumstances of a particular employment decision. *See Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992); *cf. Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1293 & n.11 (7th Cir. 1997) (holding that derogatory comments by nondecisionmakers cannot be relied on as evidence of pretext and collecting cases); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1154 (7th Cir. 1989) (holding that "actions and comments by employees not involved in a discharge decision cannot provide a basis for charging other employees with discrimination"). In respect to Anderson, it is undisputed that he was informed of the termination decision by his supervisor, Roger Bonsack. Although Krchnavy argues that there is a disputed issue of material fact whether Anderson supplied information forming the basis for the discharge decision, she fails to direct us to any record evidence that would support such a conclusion. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("It is well settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." (citing *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998))). Likewise, it is undisputed that when Wittig identified employees who performed cus-

tomer service tasks, including data entry, accounting and bookkeeping, she relied on RIF selection criteria set by the VEGA project team.

Krchnavy argues that under our earlier decision in *Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir. 1991), a pretext analysis need not be restricted to decisionmakers in all circumstances. In *Fortino*, we stated in dicta that it may be possible for an employee "outside the chain of decision" to have "valuable information bearing on the charge of discrimination." *Id.* at 396. Krchnavy argues that Anderson fits within such an exception because he was Krchnavy's immediate supervisor, informed her of the termination decision and was contacted by Wittig before she filed responses with the EEOC. However, even if we were to assume that Anderson was well-positioned to have "valuable information" pertaining to the Krchnavy termination decision, his statements were not probative of age or gender discrimination; rather, they were inaccurate statements of how the Prescott closure would affect the employment status of Squire, Cobian and himself. In *Fortino*, which also resulted in a decision for the employer, the inadequacies of the plaintiffs' case were reversed. A manager gave a speech in which he said that the average age of employees in his group had dropped and thus the employees were more capable of working longer hours. *Id.* at 395. Yet, this court ruled that the statement was not probative of the discrimination charge because the manager worked in a completely different department and the plaintiffs failed to put forward any evidence that he had information pertinent to the terminations in issue. *Id.* at 396.

Further, the deposition testimony suggests that the communication between Wittig and Anderson regarding the EEOC investigation was minimal. The only specific reference in the record relating to the investigation involved a description of Cobian's new duties at River Falls, which was written by Anderson and relied on by Wittig to prepare the

EEOC response. Such a showing is insufficient to support an inference of pretext.[2]

Finally, Krchnavy argues that LG Seeds' official position on Krchnavy's termination is substantially contradicted by subsequent events, thus casting doubt on its truthfulness. Specifically, Krchnavy was told that her position within the company was being eliminated, with the majority of her duties being absorbed by Sally Coulter at Elmwood; but in reality, a substantial portion of her job responsibilities, along with her title of "Administrative Assistant," resurfaced in the River Falls facility and was assigned to Cobian.

To support her interpretation of events, Krchnavy points to our decision in *Janiuk v. TCG/Trump Co.*, 157 F.3d 504 (7th Cir. 1998). In *Janiuk*, an employer initiated a program of cost-cutting, which included the termination of a 45-year-old sales manager. During subsequent age discrimination litigation, the employer maintained that the sales manager position had been completely eliminated while the plaintiff maintained that his job had been reassigned to a younger manager whom he had formerly supervised. *Id.* at 506. To buttress his theory, the plaintiff pointed to an organization chart, created within days of his termination, which essentially substituted the younger manager in the position formerly occupied by the plaintiff. *Id.* Such charts were routinely updated by the employer so that they could be relied on both for internal operations and for external sales presentations. *Id.* This court reversed

---

[2] In her deposition testimony, Barbara Wittig acknowledged that she also consulted with Ed Germain, a member of the VEGA project team, in order to gather information for the response to the EEOC. However, the substance of this communication is never addressed during the course of the deposition, nor is it raised in Krchnavy's briefs.

a grant of summary judgment for the employer, reasoning that if the chart was an accurate depiction of the organization following the firing of the plaintiff, a reasonable juror could conclude that the employer's proffered justification was pretextual. *Id.* at 507-08.

*Janiuk*, however, presented a much stronger case of pretext than the case now before us. While it is true that Cobian's position at River Falls was titled "Administrative Assistant/Marketing Support," which is similar to Krchnavy's former title of "Sales/Administrative Assistant-Office Manager," it is also true that Cobian's title in Prescott was "Sales and Administrative Assistant-Warehouse and Shipment Coordinator." As the similar titles suggest, this case involved a reassignment of an employee's specific duties rather than a replacement of one employee by another, as allegedly occurred in *Janiuk*. Prior to the Prescott closure, it is undisputed that Cobian occasionally performed many of Krchnavy's duties. Following the VEGA project reorganization, some of Krchnavy's duties were consolidated at Elmwood and the balance were ostensibly assigned to Cobian in River Falls. In addition, Cobian also retained the job of overseeing a mini-warehouse. Although it is certainly arguable that Krchnavy was well-qualified for Cobian's River Falls position, this line of reasoning is not relevant to the underlying issue of pretext. Instead, it merely questions the business judgment of LG Seeds. It is well settled that this line of analysis does not justify our intervention. *See*, *e.g.*, *Ritter v. Hill 'N Dale*, 231 F.3d 1039, 1044 (7th Cir. 2000) ("This court has consistently emphasized that it will not 'sit as a super personnel department to review an employer's business decisions.'" (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000))).

### III.

In summary, Krchnavy has failed to put forward sufficient evidence to permit a reasonable juror to conclude that LG Seeds' proffered reason for her discharge was a pretext for a decision motivated by age or gender. Therefore, claims under both the ADEA and Title VII must fail. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*