**Wendy VERWEY, Plaintiff–Appellant,**

v.

**ILLINOIS COLLEGE OF OPTOM-ETRY, Defendant–Appellee.**

No. 02–1212.

United States Court of Appeals, Seventh Circuit.

Argued July 10, 2002.

Decided Aug. 9, 2002.

Before COFFEY, KANNE, and ROVNER, Circuit Judges.

### ORDER

Wendy Verwey, a former employee of the Illinois College of Optometry, sued the College under Title VII of the Civil Rights Act of 1964 alleging that she was discriminated against on the basis of her sex when she was fired from the College during a reduction-in-force ("RIF") (or, more accurately, a "mini-RIF"). The district court granted summary judgment for the College, finding that Verwey had failed to show that she was fired because of her sex, and Verwey appeals. We affirm.

### BACKGROUND

Verwey commenced her employment with the college in 1996 as the administrative assistant to the director of facilities operations, Ralph Pizza. In addition to Verwey and Pizza, the Facilities department consisted of four male employees — Opie Nimon, the chief engineer, Gary Young and Barry Jones, engineers, and Howard Hook, a shipping and receiving clerk. In December 1999 Laura Rounce, the College's executive vice president and vice president for human resources, gave raises to Jones, Young, and Hook after they rejected a bid to become unionized.

Rounce gave the raises to these employees because she became aware during the unionization effort that their salaries were below the norm for similar positions at other institutions. Rounce did not give Verwey a raise at that time because she determined that Verwey's salary was commensurate with that of administrative assistants at other comparable institutions.

Because of economic reasons the executive staff of the College, which included Rounce, in late 1999 began discussing downsizing the College's staff. The executive staff determined that a RIF was necessary, and by June 2000 approximately 13 positions were eliminated; the individuals holding those jobs either took early retirement, were transferred to other positions within the College, or were discharged. Rounce, who also oversaw the Facilities department, determined that Pizza's position could be eliminated and that Nimon could perform Pizza's duties. Pizza was informed in February 2000 that his position would be eliminated, and he was terminated on April 1, 2000. In April 2000 Verwey was also informed that her position was being eliminated; the parties dispute whether Rounce or Nimon first told her of her pending termination. During May 2000 Verwey worked in both her administrative assistant position and as a clerk in the College's bookstore; Rounce had offered the bookstore position to Verwey, and Verwey wanted to try it out before deciding whether to accept it. Verwey ultimately decided not to accept the bookstore position, and her employment with the College ended on June 2, 2000. After her termination, Verwey's job duties were absorbed by both Nimon and Hook.

During Verwey's employment with the College, Nimon made numerous comments to Pizza about his negative feelings towards women. For example, Nimon stated that if he were running the Facilities

department, he would not have a woman in the position of administrative assistant. He also stated that he would never hire a woman in the maintenance department, and that he believed that women were good for only menial tasks and should not be supervising men. After Pizza had been fired, he and Nimon spoke at least once, and Nimon told him that he could not wait to "get rid of" Verwey. Before her employment ended, Nimon, who had taken over the Facilities department after Pizza's termination, had Verwey train Hook how to perform her job.

After filing a charge of discrimination with the EEOC and receiving a right-to-sue letter, Verwey filed suit against the College in April 2001 in the Northern District of Illinois. In her complaint, Verwey alleged that she had been discriminated against based on gender in violation of Title VII of the Civil Rights Act of 1964 because she was not given a pay raise in 1999, was subjected to sexual harassment during her employment, and was terminated from her position in 2001. Verwey voluntarily dismissed the sexual harassment claim, and after discovery the district court granted summary judgment to the College on her remaining claims. With respect to her wrongful discharge claim, the court found that: 1) Verwey failed to establish a prima facie case of discrimination, and 2) she failed to establish that the College's proffered reason for firing her — it eliminated her position as part of a reduction in force necessitated by poor economic conditions — was pretext for discrimination. With respect to her wage discrimination claim, the court found that Verwey failed to demonstrate that the employees who received raises were similarly situated to her or that Rounce's proffered reason for giving raises to them and not to her — their pay lagged behind the market rate — was a lie. Verwey appeals.

## DISCUSSION

### 1. Wrongful Discharge Claim

Verwey first challenges the district court's decision with respect to her wrongful discharge claim. She argues that the district court erroneously found that she failed to establish a prima facie case of sex discrimination and that she did not show that the College's proffered reason for firing her was pretext for discrimination. We review the district court's grant of summary judgment to the College *de novo*, viewing all the facts and inferences therefrom in a light most favorable to Verwey. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 2002 WL 1358591 at *4 (7th Cir.,2002). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

■ Because Verwey presented no direct evidence of discrimination, we must analyze her claim under the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, Verwey first has the burden of setting forth a prima facie case of sex discrimination. *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir.2001). The district court found that Verwey failed to establish a prima facie case because she did not provide evidence that any similarly-situated male employees were treated more favorably than her. Verwey challenges this finding; she asserts that Hook, another employee in the maintenance department, was similarly situated but was not fired.

Both the parties and the district court appear to have applied the wrong standard in analyzing whether Verwey established a prima facie case of wrongful discharge

based on sex. The court analyzed the prima facie case using the test for a RIF, in which a plaintiff must demonstrate that 1) she is a member of a protected class; 2) she reasonably performed to her employer's expectations; 3) she was subject to an adverse employment action; and 4) similarly situated employees outside the protected class were treated more favorably. *See Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 693 (7th Cir. 2000). But in a case such as this where the discharged employee's duties were absorbed by other employees, the "similarly situated" prong is inappropriate. *Id.* We have termed this situation a "mini-RIF," even in cases where more than one employee has been terminated. *See Krchnavy,* 294 F.3d 871, 2002 WL 1358591 at *4; *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1011 n. 5. In a mini-RIF a plaintiff instead must establish that her duties were absorbed by employees who were not members of the protected class. *Michas,* 209 F.3d at 693; *see also Krchnavy* 294 F.3d 871, 2002 WL 1358591 at *4; *Paluck,* 221 F.3d at 1011–12 and n. 5 (when terminated employee's duties are absorbed by others, plaintiff need not satisfy prima facie case normally required for RIF cases). Under this modified test, Verwey did establish a prima facie case of discrimination; as a woman she is a member of a protected class, she was adequately performing her job, she was fired, and male employees (Hook and Nimon) absorbed her job responsibilities. Therefore, the district court erred when finding that Verwey failed to establish a prima facie case of wrongful termination.

■ The district court also found, however, that the College was entitled to summary judgment because Verwey failed to show that its reason for terminating her was pretext for discrimination. As noted above, the College provided a legitimate,

non-discriminatory reason for firing Verwey — it terminated her position, along with the positions of numerous other employees, because economic considerations necessitated downsizing of the College's staff. Under *McDonnell Douglas,* the burden of proof then shifted to Verwey to establish that the College's proffered reason was merely pretext for discrimination. *Hoffman–Dombrowski,* 254 F.3d at 650. Verwey argues that the district court erred by finding that she did not meet her burden, asserting that "a plethora of evidence" demonstrates that the College's proffered reason was pretext.

In the employment discrimination context, pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Grube v. Lau Industries, Inc.,* 257 F.3d 723, 730 (7th Cir.2001) (citation omitted). We do not sit as a "super-personnel department," weighing the wisdom of a company's employment decisions; rather, we are concerned only with whether the employer's proffered explanation was honest. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir.2001). Thus, to establish pretext, an employee must prove that 1) the employer's explanation has no basis in fact; 2) its explanation was not the real reason for her termination; or 3) that the stated reason was not sufficient to justify her termination. *Hoffman–Dombrowski,* 254 F.3d at 652.

Here, Verwey failed to present any evidence to show that the College's proffered explanation for her firing was untruthful or without basis. Verwey points to Nimon's numerous discriminatory statements as evidence of pretext, asserting that Nimon's negative attitude towards women shows that she was fired because of her gender. But the undisputed deposition testimony of both Nimon and Rounce established that Rounce alone decided to terminate Verwey and that Nimon played no

part in that decision. Nimon's discriminatory comments therefore are not evidence of pretext, because an inference of pretext arises only where a decisionmaker makes false or inconsistent statements about the circumstances of an employment decision. *Krchnavy*, 294 F.3d 871, 2002 WL 1358591 at *5. Verwey argues that a voicemail message Rounce left for Nimon regarding her termination raises an issue of fact whether Nimon was involved in the decision to terminate her. In the voicemail message, Rounce told Nimon that he "owe[d][her] big time" because she got Verwey "to take another position." While this statement could not be explained by Rounce at her deposition, it does not show that Nimon was in any way involved in the decision to terminate Verwey from the Facilities department. The uncontradicted evidence shows that Rounce informed Nimon of her decision to fire Verwey only after the decision had been made and that Nimon took no part in making that decision. Because the evidence does not show that Nimon was involved in the decision to terminate Verwey, his negative comments about women do not establish that the College's asserted reason for firing Verwey was a lie.

### 2. Wage Discrimination Claim

■ Verwey also argues that the district court erred in granting summary judgment to the College on her wage discrimination claim. She asserts that she raised an inference of discrimination by showing that the three maintenance men in her department received raises after voting against unionizing, but that she, the lone female employee, did not. Verwey's claim fails for several reasons. First, she did not establish that the maintenance men were similarly situated to her. Although they worked in the same department, they had different job titles and responsibilities and therefore did not hold equivalent positions; Verwey was an administrative assistant, not a maintenance worker. *Hoffman–Dombrowski*, 254 F.3d at 651; *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000) (to be similarly situated, employees must hold positions with "substantial similarity" to one another). Additionally, Verwey failed to rebut the College's proffered reason for why the maintenance workers received a raise but she did not – the fact that their wages were below the market average and hers was not. Verwey presented no evidence to show that this reason was a lie, other than her own opinion that all of the employees in the facilities department were to receive raises as a reward for voting against unionization and that she did not receive a raise because she was a woman. But a party's own speculation is not sufficient to create a genuine issue of material fact, *Jordan v. Summers*, 205 F.3d 337, 343–44 (7th Cir.2000), and the district court did not err by granting summary judgment to the College.

AFFIRMED