**Dennis L. HOLLOWELL, Plaintiff–Appellant,**

v.

**INTERNATIONAL MILL SERVICE, INC., Defendant–Appellee.**

No. 02–3243.

United States Court of Appeals, Seventh Circuit.

Submitted April 29, 2003.*

Decided April 30, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before COFFEY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

### ORDER

Believing that he lost his job because of his age, 48–year–old Dennis Hollowell sued his former employer, International Mill Services, Inc. ("IMS"), for violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a); retaliation for bringing a charge of age discrimination, 29 U.S.C. § 623(d); and breach of the Collective Bargaining Agreement ("CBA") between IMS and Hollowell's union. The district court granted IMS's motion for summary judgment, and Hollowell appeals. We affirm.

Construing the record in the light most favorable to Hollowell, the non-moving party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), it appears that he was hired as a heavy-equipment operator by IMS foreman Jeff Studebaker in May 1998. Hollowell's work consisted of hauling vats of molten metal and separating steel from slag at the Slater Steels Corporation pursuant to a contract between IMS and Slater Steels. Until he lost his job in December 2000, Hollowell was the lone IMS employee working the third shift at

Slater Steels, which ran from 11:00 P.M. until 7:00 A.M.

■ In December 2000, Slater Steels shut down its third-shift melting operations at the plant where Hollowell worked. The company was phasing out its melting operations at this plant, and had already ceased its second-shift operations. Hollowell's job was the first threatened by the shut-downs because Slater Steels had requested that second-shift IMS employees continue hauling melting pots left over from the first shift.

The decision whether to terminate Hollowell after the shut-down fell to Studebaker. Hoping to eliminate a backlog of work, he decided to offer Hollowell a temporary position on the first shift. He had reservations about this decision, however. First, there was less and less work at Slater Steels, and Studebaker knew that IMS's relationship with the steel manufacturer would · end in just five months. Second, Studebaker had not been overly impressed with Hollowell. Although Hollowell had generally performed his work adequately and had even trained others, Studebaker felt that he did not have the best attitude and was tardy too often. Studebaker had also heard repeated complaints from Hollowell's co-workers on the second shift, who felt that Hollowell kept them around after their shift ended just to have an audience for his job-related criticisms. Finally, Studebaker felt that Hollowell was the least productive of his three heavy equipment operators.

Despite these reservations, Studebaker called Hollowell and instructed him to report to the first shift on December 18, 2000. Hollowell refused for childcare reasons, and requested to be assigned to the second shift. Although Studebaker replied during this conversation that he would ask the second-shift machinery operator to switch with Hollowell, after the conversation ended he changed his mind and decided instead to just fire Hollowell. Hollowell learned of that decision on December 18.

On December 20, Hollowell and his union representative, Randy Hopkins, met with Studebaker to discuss IMS's termination decision. At this meeting Hollowell offered to make childcare arrangements so that he could work the first shift, but Studebaker declined to rehire him. Afterward, Hopkins persuaded Hollowell not to file a grievance under the CBA, fearing that Studebaker might attempt to "mess up" Hollowell's unemployment benefits because the meeting had been "hostile." Hollowell's duties were absorbed by the remaining IMS employees at Slater Steels until the IMS–Slater Steels contract expired and they too were laid off.

After an unsuccessful job search, Hollowell brought this action against IMS. He alleged that he had been terminated because of his age in violation of § 623(a) and that on four occasions after he was fired IMS had retaliated against him for filing his age-discrimination charge with the Equal Employment Opportunity Commission. *See* 29 U.S.C. § 623(d). He also contended that IMS breached the CBA's seniority and insurance provisions by firing him instead of less-senior heavy-equipment operators and then terminating his company insurance policy immediately, rather than waiting the contractually specified thirty days.

The district court granted summary judgment to IMS. Regarding Hollowell's age-discrimination claim, the court first noted that Hollowell had no direct evidence tending to show that age played a role in the decision to fire him. Hollowell thus had to proceed under the *McDonnell Douglas* burden-shifting method. *See McDonnell Douglas v. Green*, 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because he was a victim of what we have dubbed a "mini-reduction-in-force", *see Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir.2002), the success of Hollowell's discrimination claim depended on his showing that 1) he was a member of a protected class; 2) he was meeting his employer's legitimate job expectations; 3) he suffered an adverse employment action; and 4) his duties were absorbed by other employees not in the protected class. *Id.* at 875–76. IMS conceded that Hollowell could establish these elements of a prima facie case. But it argued, and the district court agreed, that Hollowell could not satisfy his ultimate burden of proving discrimination because he could not show that IMS's stated reason for firing him–that he was perceived to be the most troublesome heavy equipment operator among a group subject to downsizing–was pretext masking discriminatory motives. Regarding Hollowell's retaliation claim, the court ruled that Hollowell had no evidence that IMS had intentionally done anything to thwart his future employment prospects. Lastly, the court noted that Hollowell had not exhausted his contractual remedies under the CBA by filing a grievance. He was thus precluded from bringing his CBA-related claims in federal court. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001).

Hollowell appeals; for simplicity's sake we consider his claims out of order. First, he has abandoned his CBA-related claims by not mentioning them in his opening appellate brief. *See Jones v. Union Pac. R.R.*, 302 F.3d 735, 741 (7th Cir.2002). Second, in trying to revive his discrimination claim, he offers only the unsupported assertion that he "was not the poorest of the heavy equipment operators" and that therefore IMS's termination rationale must be pretext. But an employee's self-serving assessment is insufficient to contradict an employer's negative opinion of his abilities, *see Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir.1999), and cannot by itself disprove the employer's stated reason for terminating the employee. *See Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). In any event, Hollowell was not fired only because his employer thought he was the least productive heavy-machinery operator; his employer's perception that he had a poor attitude also contributed to the decision not to find him a new job once his old one had evaporated. Hollowell offers no evidence tending to show that IMS's assessment of his attitude was pretext, and thus his discrimination claim must fail. *See Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir.2002) (plaintiff must disprove each of employer's stated reasons for discharge).

■ Hollowell's retaliation claim remains. The first instance of alleged retaliation involved a mock reference check during which one of his friends called IMS and asked to speak with Studebaker. Studebaker took the call but declined to comment regarding Hollowell's employment history because "it was in litigation on an age-discrimination lawsuit." Second, Studebaker told an EEOC investigator following up on Hollowell's discrimination charge that Hollowell was "not very dependable" and "needed supervision." Third, Hollowell's wife allegedly spoke with a representative of Hollowell's union, who informed her that an IMS vice-president had told the union representative that "Dennis Hollowell is suing us and he is going to sue you [the union] too." Lastly, Hollowell submitted to the district court the statement of Jennifer Stevens, the office manager for a company to which Hollowell had applied after losing his job at IMS. Stevens reported that despite several

telephone and fax messages no one at IMS ever confirmed Hollowell's employment with the company.

Although post-termination retaliation is actionable, *see Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (Title VII case); *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 885 n. 1 (7th Cir.1996) (retaliation provisions of Title VII and Age Discrimination in Employment Act materially identical), Hollowell has no direct evidence that the instances he cites were in fact retaliatory. He thus had to proceed under the indirect method of proof adapted from the *McDonnell Douglas* framework, which in this case required that he show that IMS subjected him to adverse employment actions not inflicted upon other, similarly situated former employees. *See Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir.2002). This Hollowell did not do. His first three instances of alleged retaliation do not amount to adverse employment actions, for there is no evidence that Studebaker or anyone else at IMS ever provided information about Hollowell's lawsuit or his job performance to Hollowell's actual potential employers, or that, if they had, the potential employer would have acted upon that information to Hollowell's detriment. *See Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 753–54 (7th Cir.2002)(no adverse action where no proof comments elicited during mock reference check affected plaintiff's career opportunities); *Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 709 (7th Cir.1995) (post-termination comment to potential employer not retaliatory because it did not impact plaintiff's job prospects). And although IMS's failure to reply to Stevens did impinge upon Hollowell's future em-

ployment opportunities, IMS presented undisputed evidence that company policy precludes Human Resource representatives from returning unsolicited telephone messages or written correspondence. Hollowell did not produce any evidence that the company returned unsolicited messages on behalf of former employees who had not filed discrimination charges; his retaliation claim thus fails.

AFFIRMED.