In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2255

Anna D. Wells,

Plaintiff-Appellant,

v.

Unisource Worldwide, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4540--George W. Lindberg, Judge.

Argued January 23, 2002--Decided May 10, 2002

  Before Bauer, Coffey, and Evans, Circuit
Judges.

  Coffey, Circuit Judge.  Anna Wells
claimed that her former employer,
Unisource Worldwide, Inc., discriminated
against her because of her race (African
American) in transferring her job
assignment from the state of Illinois to
the state of Wisconsin. Wells also argues
that Unisource discriminated against her
when it refused to offer her other
positions within the company after she
declined to accept the transfer. Wells
further claimed that the decision to
transfer her position out of state was
made in retaliation for her filing a
discrimination claim against Unisource in
1998. Unisource presented a legitimate,
non-discriminatory reason for the
transfers--in order that it might improve
communications between its sales
departments and credit departments. The
trial court granted summary judgment in
favor of Unisource, ruling that Wells had
failed to establish that Unisource's
proffered non-discriminatory reasons for
transferring the positions were
pretextual. We affirm.

I.  Factual Background

  Unisource sells janitorial cleaning
products and communication paper products
in the states of Illinois and Wisconsin.

Anna Wells, an African American, was initially employed by Unisource in 1993 as a data entry clerk in the state of Illinois at its Itasca plant. Three months later, Unisource promoted Wells to the position of cash applications clerk in its credit department. In 1998, Wells filed a charge of discrimination against her employer, alleging that it had discriminated against her on the basis of her race when it failed to elevate her to the position of credit administrator. Shortly after Wells filed the charge, Unisource settled the discrimination claim and agreed to promote her to the next open credit administrator position in the Itasca, Illinois, facility. In March 1999 a credit administrator position at Itasca became vacant and Unisource promoted Wells to the position.

At the time of Wells's promotion, Unisource's credit department had a bifurcated organizational structure for the assignment of accounts: credit administrators processed payments and delivery based upon whether the products purchased were office paper products ("fine paper") or janitorial supplies ("supply systems"). Additionally, credit administrators generally handled only those accounts that were located in the same state in which they were employed. Thus, credit administrators who handled Wisconsin-based "fine paper" accounts operated out of Unisource facilities in the cities of Appleton and New Berlin, Wisconsin. But for reasons not explained in the record, two credit administrators who handled Wisconsin-based "supply systems" accounts worked at Unisource's Itasca, Illinois, facility. Wells was one of the two credit administrators who handled primarily Wisconsin-based "supply systems" accounts (though she also had some Illinois-based accounts), but worked in Unisource's Itasca, Illinois, facility and not in its Wisconsin facility. The other credit administrator who handled Wisconsin-based accounts, but was employed in Illinois, was Betsy Novinski, a Caucasian female.

In March 2000, Walt Welsh, Director of Unisource's Itasca credit department, and Alice Gorman, Unisource's Human Resources Director, decided to restructure its credit department so that credit administrators were located in the same facility as the sales staff that sold its

products and so that credit administrators would handle only local customer accounts. In other words, Unisource determined that the credit administrators who handled Wisconsin-based accounts should be located in its Appleton and New Berlin, Wisconsin facilities, and not in the Itasca, Illinois, facility. Unisource also believed that if the credit administrators were in the same facility as its sales staff, the sales staff could meet with the credit administrators face-to-face in order that they might better resolve customer credit problems. Unisource further believed that consolidation of the Wisconsin-based credit administrators would facilitate and improve the collection rate on Wisconsin-based accounts. Accordingly, Unisource relocated the two credit administrator positions (Wells's and Novinski's) handling Wisconsin accounts from its Itasca, Illinois, facility to its Wisconsin facilities.

Upon being informed of Unisource's decision to restructure its credit administrator positions, Novinski immediately applied for and received another position within Unisource's Itasca facility two months prior to the effective date of her impending transfer. In spite of the fact that Unisource informed Wells that she was free to apply for any open position in the Itasca facility, for reasons unexplained she failed to immediately apply for any other positions (as Novinski had previously done) and continued working in her soon-to-be-eliminated Itasca credit administrator position.

Approximately one month later (April 2000), a credit administrator position in the Itasca facility became available after an employee resigned and Wells submitted her application. The open position handled "fine paper" accounts and required three to five years commercial credit experience as well as the ability to handle accounts receivable portfolios with exposures ranging from four to six figures. Ultimately, the company hired Lisa Jablenski, a white female, for the position because of her superior qualifications. Jablenski had approximately 10 years experience in credit and collection where Wells had a mere thirteen months of experience in a credit administrator's position. In

addition, Jablenski had been responsible for handling accounts that had exposures in the seven-figure range, whereas Wells's experience was limited to accounts with exposures in the four- to five-figure range. According to Tom Freske, Unisource's Midwest Market Area Credit Manager, the company's decision in hiring Jablenski rather than Wells was based upon her lengthy experience in the credit and collection field.

After she failed to secure the open credit administrator position in Itasca, Wells attempted to persuade Unisource to retain her in an Itasca-based credit administrator position. In this regard, Wells requested that Unisource create a part-time position for her at the Itasca facility where she would continue to handle the Illinois accounts, but Unisource declined to create this new, part-time position. Wells also applied for other positions at the Itasca facility, but failed to be selected for any of them. On April 14, 2000, Wells's position was relocated to Appleton, Wisconsin. Because Wells refused to accept a transfer to Appleton and also because she had been unsuccessful in her application for other positions at the Itasca facility, Unisource terminated her contemporaneous with the time her former position was relocated. At the time Wells was laid off, Unisource informed her that she remained free to apply for any open positions at the Itasca facility. Because Wells was unqualified to fill any of the open positions at Itasca, her applications for re-employment continued to be unsuccessful.

Wells sued Unisource after her termination, alleging discrimination based upon race (African American) inviolation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., in transferring her position to Appleton and in failing to hire her for the open credit administrator position at Itasca. Wells also claimed that Unisource was guilty of unlawfully retaliating against her for her filing of the 1998 discrimination charge when it decided to transfer her position out of the state to Appleton, Wisconsin. Because Wells had failed to rebut any of Unisource's non-discriminatory reasons for implementing its restructuring plans or for selecting and hiring Lisa Jablenski (rather than

Wells) for an open credit administrator position in Unisource's Itasca facility, the trial court granted summary judgment in favor of Unisource. The trial court concluded that Wells failed to establish a causal connection between her 1998 filing of a discrimination charge and Unisource's employment decisions in the year 2000. Wells appeals.

II.  Issues

On appeal, Wells raises two issues. Initially, Wells argues that the trial court committed error in ruling that Wells failed to establish that Unisource's proffered reasons for transferring her position were pretextual. Second, Wells argues that the trial court erred in ruling that she had failed to establish a causal connection between her 1998 filing of a discrimination charge against Unisource and its 2000 decision to transfer her position.

III.  Analysis

Wells initially argues that the trial court erred in granting summary judgment in favor of Unisource on her claim that it discriminated against her because of her race by relocating her credit administrator position to Wisconsin. Wells had no direct evidence that Unisource discriminated against her because of her race and so proceeded under the familiar burden-shifting test set forth initially in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this test, Wells was initially required to carry the burden of establishing a prima facie case of discrimination and demonstrate that: 1) she was a member of a protected class; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) other, similarly-situated employees who were not members of the protected class were treated more favorably. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012 (7th Cir. 2000). Although we often comment that "the prima facie case under McDonnell Douglas must be established and not merely incanted," Unisource conceded before the trial court that Wells had established a prima facie case of discrimination. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir.

1997)./1

After Wells established a prima facie case of racial discrimination, the burden of production shifted to Unisource to show a legitimate, non-discriminatory reason for its employment action. See Paluck, 221 F.3d at 1012. Once Unisource has proffered a legitimate non-discriminatory reason for its action, the burden returns to Wells to demonstrate that Unisource's proffered reason was pretextual. Id. In order to establish pretext a plaintiff must demonstrate that an employer's proffered explanation for an employment decision is a dishonest explanation, rather than merely an error. Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001) (internal quotations omitted). To demonstrate pretext, Wells must demonstrate that Unisource's articulated reason for her discharge either: (1) had no basis in fact; (2) did not actually motivate her discharge; or (3) was insufficient to motivate her discharge. Velasco v. Illinois Dept. of Human Serv., 246 F.3d 1010, 1017 (7th Cir. 2001).

Despite its concession that Wells had established a prima facie case, Unisource did come forward with two legitimate, non-discriminatory reasons for its action. Unisource argued that it realigned the credit administrator positions in order to facilitate communication between its credit department and its sales department offices located in Appleton and New Berlin, Wisconsin, and secondly to improve customer relations and account collection in the region being served.

Wells argues that she successfully carried the burden of demonstrating that these reasons were pretextual, and thus the trial judge erred in granting Unisource summary judgment. Wells vaguely contends that Unisource's plan to relocate two credit-administrator positions was part of a scheme to discriminate against her because of her race. In support Wells points only to the deposition testimony of a co-employee

whose personal opinion was that Welsh, the Unisource official who decided to relocate Wells's position, had a "problem with [African Americans]." Conculsory assertions about a decision maker's racial prejudice are insufficient to establish pretext. Oest v. Illinois Dept. of Corr., 240 F.3d 605, 614 (7th Cir. 2001); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1032-33 (7th Cir. 1998).

Wells further asserts that Unisource's decision to transfer her position was pretextual because no white credit administrators were transferred and that less senior, white employees' positions were not transferred. But Wells ignores the fact that Unisource transferred the credit administrator position occupied by Betsy Novinski, a white female, from Itasca, Illinois, to New Berlin, Wisconsin. Indeed, Unisource relocated the positions of each of the two credit administrators in Itasca, Illinois, who handled Wisconsin-based accounts--both Wells's position and Novinski's position. Thus, the other Itasca credit administrators who were not transferred were not similarly situated to Wells because their work assignments differed from hers in that they were exclusively assigned to dealing with Illinois-based accounts, and not Wisconsin-based accounts. Under the law, Wells cannot establish pretext by pointing to employees who were not similarly situated to her. Gonzalez, 133 F.3d at 1033.

Unisource provided an unrebutted, non-discriminatory reason for its business decision to restructure its credit department--to improve the efficiency of its credit department, including but not limited to allowing for face-to-face interaction of its employees, its customer relations, and its collections rate. Wells attempts to demonstrate that this business reason was pretextual by suggesting that there was some type of an elaborate conspiracy among Unisource management. According to Wells's unsupported conspiracy theory Unisource desired to discharge her in 1998 and in order to hide its discriminatory motive it first promoted her, then waited approximately one year for the dust to settle and ultimately transferred not one but two positions to Wisconsin in order that it might hide its discriminatory

motive and force Wells either to accept a transfer or to resign. Because of the lack of evidence in the record in support of Wells's theory, we are not convinced and refuse to base our decision on her mere speculation. We have typically been wary of allegations based on nothing but an attempt to come up with a conspiracy theory and in particular where there is not a scintilla of evidence in the record before us to support Wells's theory. Murray v. Chicago Transit Authority, 252 F.3d 880, 888 (7th Cir. 2001).

Wells also argues that the reasons given by Unisource to hire Lisa Jablenski (rather than Wells herself) for the open credit administrator position at its Itasca facility were pretextual. Unisource pointed out the marked differences in the superior qualifications of Jablenski (10 years experience handling credit and collection with accounts in the seven-figure range) over Wells (13 months handling credit and collection with exposure to accounts in the five-figure range) as the reason for its decision. Wells failed to provide any evidence to establish that Unisource did not really believe Jablenski to be more qualified. Instead, Wells quibbles with Unisource's selection criteria and argues that it erred in determining that Jablenski was more qualified. As we often comment, courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions. Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). It is well established that a desire to hire a more experienced or better qualified applicant is a valid non-discriminatory reason on which to base a hiring decision. Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 765 (7th Cir. 2001). Moreover, Wells failed to provide us with even an iota of evidence to suggest that Unisource's reasons for selecting Jablenski were pretextual. Indeed, Wells's entire argument that Unisource's reasons for hiring Jablenski were pretextual consists of two paragraphs without a single citation to any facts in the record that would lend support to her speculation, much less any relevant case law. We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. Clay v. Holy Cross Hospital, 253 F.3d 1000, 1002

n.1 (7th Cir. 2001).

Lastly, Wells argues that the trial court erred in granting Unisource summary judgment on her retaliation claim. In order for a plaintiff to establish a prima facie case of retaliation under Title VII, Wells was required to establish that: 1) she engaged in a statutorily protected activity; 2) she suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse action. Velasco, 246 F.3d at 1017 n.6.

Wells has failed to meet the third prong. In order to establish a causal link between protected activity and anadverse employment action, a plaintiff must demonstrate that the employer would not have taken the alleged adverse action "but for" the plaintiff's protected activity. Rizzo v. Sheahan, 266 F.3d 705, 715 (7th Cir. 2001); Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001). Wells has failed to even attempt to demonstrate the causal link between her 1998 filing of a discrimination claim and the 2000 plan to restructure the credit department. Indeed, her cursory argument suggests only that her credit administrator position was the only position terminated, an assertion directly contrary to the record before us. Wells suggests that another circuit has found that a retaliation claim was established despite a fourteen-month time lapse between expression and retaliation. See Shirley v. Chrysler First, Inc., 970 F.2d 39 (5th Cir. 1992). But, in Shirley, the plaintiff's direct supervisor began to harass the plaintiff immediately after the filing of her EEOC complaint, "mention[ing] her EEOC complaint to her at least twice a week and 'harass[ing] [her] to death about it.'" Id. at 43. The facts of this case are not as compelling, as the plaintiff-appellant Wells makes no allegation that any supervisor ever mentioned her 1998 discrimination charge, much less "harassed" her about it. Even were we to find this precedent compelling, it stands only for the proposition that Wells might have been allowed to offer evidence that her expression caused the adverse employment action--not that it actually did. Wells has simply failed to point to any evidence in the record to support her

argument that Unisource would not have made the business decision to restructure its credit department unless she had (more than one year earlier) complained it had discriminated against her. We have held in numerous cases that a "one-year lapse between the protected expression and the employee's termination, standing alone, [is] too attenuated to raise an inference of discrimination." Oest, 240 F.3d at 616 n.8. In other words, the hint of causation weakens as the time between the protected expression and the adverse action increases and the plaintiff must offer additional proof of a causal nexus. Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000). Wells has failed to offer any such evidence.

The decision of the trial court is AFFIRMED.


FOOTNOTE

/1 Unisource argues on appeal that Wells did not establish a prima facie case because she did not demonstrate that other, similarly-situated employees were treated more favorably. But by conceding before the trial judge that Wells could establish a prima facie case, Unisource has waived these arguments on appeal. 4901 Corp. v. Town of Cicero, 220 F.3d 522, 529 (7th Cir. 2000).