Kira **MORRISON**, Plaintiff–Appellant,

v.

**PANDUIT CORPORATION, and Illinois Business Corporation,** Defendant–Appellee.

No. 03–3081.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 2004.

Decided Dec. 21, 2004.

Andersen J. Ward, Matteson, IL, for Plaintiff–Appellant.

Michael A. Warner, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, EVANS, and SYKES, Circuit Judges.

## ORDER

Kira Morrison sued Panduit Corporation under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e through 2000e–17, claiming that the company discriminated against her because she is African–American. The district court, reasoning that Ms. Morrison's evidence could not create a reasonable inference that Panduit's stated reasons for dismissing her were not its actual reasons, or that racial discrimination played any role in that decision, granted summary judgment for Panduit. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

Ms. Morrison worked as an information technology consultant for Maxim Group, a temporary employment agency. Maxim assigned her to Panduit from August 1997 until December 1999. Sometime before December 1999 (we do not know exactly when), Jim Toporski of Panduit asked Ms. Morrison to work for Panduit's Information Technology department. Ms. Morrison declined because she thought that her contract with Maxim prohibited her from accepting another job for six months. In December 1999 her consultancy ended. In December 2000, Ms. Morrison approached Toporski and asked him for a job at Panduit; he suggested she return as a consultant. During that second consultancy stint, Toporski agreed to hire Ms. Morrison. Ms. Morrison became a Panduit employee in May 2001 when Joanne Tyree, Vice President of Information Technology, approved the hire. Ms. Morrison was assigned to Toporski's order-management team.

After just 2½ months, Ms. Morrison was one of ten employees terminated from Panduit's Information Technology department during an economically motivated reduction in force ("RIF"), the second RIF in a matter of a few weeks. Tyree decided whom to dismiss. She identified relevant factors including seniority, performance rating from the most recent formal evaluation, and critical or specialized skills necessary to keep the Information Technology department running, e.g., knowledge of certain computer languages. The nine other employees that Tyree terminated were white. Including Ms. Morrison, there were five African–American employees in the Information Technology department, and the four other African–American employees kept their jobs.

After her dismissal, Ms. Morrison filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging among other things that she was terminated because she is African–American. The EEOC issued a right to sue letter. Ms. Morrison then filed this suit under Title VII, alleging that Panduit terminated her because of her race.

## B. District Court Proceedings

The district court granted summary judgment for Panduit. The district court first explained that Ms. Morrison could not prevail under the direct method of establishing discrimination. In her deposition, Ms. Morrison had admitted that she lacked a basis to believe that either Kohlberg or Tyree were prejudiced and conceded that neither ever mistreated her. The only direct evidence she submitted was a comment made by human resources employee Ellen Kohlberg that Ms. Morrison took as an expression of surprise at her race: "Oh, I've seen you around, but I didn't know that you were who you are." Ms. Morri-

son also testified that Kohlberg had delayed forwarding Ms. Morrison's job offer. Kohlberg, however, was not involved in the decision to terminate Ms. Morrison, so the district court held that this evidence could not establish discrimination. See Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1087–89 (7th Cir.2000).

The district court next held that Ms. Morrison could not prevail under the burden-shifting approach. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–07, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir.1998). At summary judgment, Panduit did not dispute that Ms. Morrison could make out a prima facie case that Panduit terminated her despite keeping several similarly situated white employees, even though Ms. Morrison's performance was meeting expectations. Janiuk, 157 F.3d at 507. Instead, Panduit submitted Tyree's deposition testimony as evidence of a legitimate business reason for firing Ms. Morrison. Tyree explained that she terminated Ms. Morrison because she had been employed only briefly, had no formal performance evaluation, and had no skills critical to the Information Technology department. Formal performance evaluations at Panduit are detailed, standardized ratings designed to achieve consistency. Because consultants working at Panduit are not formally evaluated, Ms. Morrison lacked a formal rating. Tyree testified that she did not speak to Toporski or other supervisors before deciding whom to terminate because she wanted to avoid subjectivity and arguments. She admitted that she did, however, speak to Jim Cheffer, the supervisor of the manufacturing team; Cheffer's team, which had already been reduced in numbers by an earlier layoff, was "below his head count budget," and she needed to know whom he could spare. After speaking with Cheffer, she decided not to dismiss Linda Michalak,

who like Ms. Morrison had no formal performance rating, because Michalak knew computer languages vital to the manufacturing department.

In her reply to Panduit's motion for summary judgment Ms. Morrison argued that Tyree applied the company's RIF policy inconsistently. Tyree, for example, requested additional information from Cheffer about Michalak without giving Ms. Morrison the same consideration. Tyree also decided to retain Tony Przytula, who had no critical skills and low seniority, because he had a high performance review. She did not terminate Chuck Newman or Donna Sroczynski, who were both at Panduit for 21 years but had bad performance ratings. By contrast to these employees, however, the district court noted that Ms. Morrison had only 2½ months seniority, no formal evaluation, and no critical skills; these factors constituted a legitimate business reason to dismiss her, and Ms. Morrison did not discredit that reason.

Ms. Morrison's reply also offered her own testimony that two weeks before her dismissal Toporski assured her that she was a good employee and that she did not need to worry about being dismissed because the company considered performance in making RIF decisions. She also asserted that Toporski told her after her termination that poor performance was not the reason she was let go. The district court, noting that its role was not that of a "super personnel" department, held that it should not be deciding whether Toporski's or Tyree's business judgment should prevail. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir.2002).

Finally, Ms. Morrison pointed to Panduit's interrogatory answer that she was the only African–American hired by the Information Technology department since 1989—while 45 whites were hired—as evidence of a company-wide pattern of racial discrimination. The district court acknowledged that statistics might be helpful in showing discrimination, but these statistics did not show that Tyree, who was not involved in many of the decisions, was biased. Anyway, the statistics alone could not show causation; they did not relate to the RIF, the employment action at issue in the case. Moreover, the district court noted that Tyree had hired Ms. Morrison in the first place, knowing she is African–American. Therefore, it was unlikely that she would fire Ms. Morrison on account of her race.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo, while viewing all the facts in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir.2002). Summary judgment should be granted only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp.*, 477 U.S. at 322. As the moving party, Panduit would be entitled to judgment as a matter of law unless "the evidence of record would allow a reasonable jury to return a verdict for the nonmoving party," Ms. Morrison. *See Wright v. Ill. Dep't of Corr.*, 204 F.3d 727, 730 (7th Cir.2000).

The only argument Ms. Morrison presents on appeal is her contention that the district court erred in holding that she offered insufficient evidence to prove that Panduit's stated reason for dismissing her was a pretext for discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802–07. Under the *McDonnell Douglas*

burden-shifting approach, the plaintiff must first make a prima facie case by showing that she was a member of a protected class who was meeting the employer's expectations yet was terminated despite the employer's decision to keep other similarly situated employees not in a protected class. *Janiuk,* 157 F.3d at 507. If the employer then comes forward with a legitimate business reason for dismissing the employee, the burden shifts back to the plaintiff to rebut that reason by showing that it was in fact dishonest or discriminatory. *See Koski v. Standex Int'l Corp.,* 307 F.3d 672, 677 (7th Cir.2002); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir.1999).

 As it did before the district court, Panduit argues that the undisputed evidence establishes that it had a legitimate business reason to dismiss Ms. Morrison— Tyree's policy of looking to seniority, formal performance evaluations, and critical skills—and that Ms. Morrison presented no evidence to raise a reasonable inference that Panduit's reason was dishonest or discriminatory.

Ms. Morrison makes much of the fact that, about two weeks before her termination, Toporski assured her that the company based RIF on performance generally, yet Tyree's policy changed that rule by looking at formal performance evaluations in isolation. Ms. Morrison asserts that this change in policy renders Tyree's reasons doubtful or illegitimate, especially considering that Ms. Morrison was the only employee with an "excellent" informal performance rating. Ms. Morrison implies that the law requires Panduit's justification for dismissing her to arise from a long-standing company policy. There is no such per se rule. Moreover, the cases upon which she relies do not help her. In *Piraino v. International Orientation Resources,* the evidence suggested that the

plaintiff's supervisors, who wanted to terminate her because she was pregnant, tricked her into quitting by promising her that the company had a policy of holding jobs open as a kind of informal maternity leave. *See Piraino v. Int'l Orientation Res., Inc.,* 84 F.3d 270, 271–73, 274–76 (7th Cir.1996). In *Sarsha v. Sears, Roebuck & Co.,* the employer claimed that it had fired the plaintiff because he violated an unwritten policy against dating, but evidence indicated that there was no such policy and the dismissal was on account of age. *See Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1040 (7th Cir.1993). By contrast Ms. Morrison never has disputed that Tyree based her decision on seniority, formal performance evaluations, and critical skills. Moreover, Ms. Morrison insists that Toporski played no part in the decision to fire her; therefore Toporski's characterization of the policy is immaterial. Indeed, her "excellent" rating was really just a note Toporski wrote on a form after she was terminated, and it is difficult to see how it shows prejudice on Tyree's part at the time she made the decision to discharge Ms. Morrison. Like the district court, we conclude that Ms. Morrison presented insufficient evidence to prove to a jury that Tyree's decision to rely on detailed, rigorous and consistent formal evaluations was dishonest or discriminatory. *See Koski,* 307 F.3d at 677; *Mills,* 171 F.3d at 458.

Ms. Morrison also submits that the district court erred in concluding that Tyree's approval of Ms. Morrison's hire, knowing she is African–American, undercut the conclusion that Tyree was racially prejudiced. Because Tyree's approval was a mere formality, argues Ms. Morrison, the inference that she was not prejudiced is weak. *See Herrnreiter v. Chicago Hous. Auth.,* 315 F.3d 742, 747 (7th Cir.2002). The point is irrelevant, however, because it was not the basis of the district court's

order. Instead, the district court concluded that there was insufficient evidence to rebut Tyree's business reasons to dismiss Ms. Morrison.

Additionally, Ms. Morrison contends that the district court made "credibility determinations" inappropriate for summary judgment. In essence, Ms. Morrison asserts that the district court overlooked a number of issues for trial because it resolved disputed issues in Panduit's favor. These disputed issues fall into one of three categories. First, Ms. Morrison maintains that Tyree applied her policy inconsistently to favor white employees; second, she insists that Tyree's implementation of the policy conflicted with Toporski's high regard for her abilities; and third, she concludes that the unwritten RIF policy disfavored her because Panduit has an institutional prejudice against hiring African–Americans as permanent employees. As the district court explained, however, none of these contentions raises a genuine issue of material fact to support a reasonable inference that Panduit's stated reasons for terminating Ms. Morrison were dishonest or discriminatory.

With respect to her arguments that Tyree applied the RIF policy inconsistently, Ms. Morrison again points out that Tyree talked to Michalak's supervisor without also talking to Toporski about her. Tyree, however, explained in her deposition that Michalak's team, the manufacturing team, was understaffed, and therefore she had to ask the team's supervisor whether he could spare Michalak. There is no evidence that Ms. Morrison's order-management team was similarly understaffed. Moreover, Tyree determined that Michalak knew computer languages no one else on her team did and that those languages were critical for the manufacturing team. Ms. Morrison does not dispute that Michalak had the specific computer skills that Tyree identified and, based on this record, there is no reason to think that Tyree's actions were dishonest. Next, although Tyree testified that she decided to retain Tony Przytula, a white employee, because he had an excellent performance rating, Ms. Morrison views that reason as pretextual because Ms. Morrison had performed assignments just as complex as Przytula's. Likewise, Ms. Morrison believes that Tyree should not have kept Chuck Newman and Donna Sroczynski because they were low performers, even though they had each been at the company for 21 years. She also questions Tyree's choice to keep several other employees because, in Ms. Morrison's opinion, "they had relatively low years of service, relatively low documented performance and did not possess any critical skill set." By contrast to these employees, however, Ms. Morrison had only 2½ months seniority, no formal performance rating and no critical skills, and therefore she was not treated inconsistently. In fact, as the district court explained, each of her concerns amounts to no more than questioning Tyree's business judgment and, on that basis, must fail. *See Wells*, 289 F.3d at 1007; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 626 (7th Cir. 2001); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997).

In a similar vein, Ms. Morrison argues that the district court disregarded evidence of the high regard that Toporski had for her work. For example, she argues that Tyree's use of a spreadsheet to implement her RIF criteria must have been a pretext because her goal was to keep the best people, and Toporski thought she was one of the best. Likewise, Ms. Morrison argues that, because Toporski told her that poor performance was not the reason for her dismissal, she must have been terminated because of her race—although she concedes that Toporski had nothing to do with making the decision to terminate her.

438

In any event, all these arguments must fail because Toporski's high view of Ms. Morrison does not suggest that Tyree was dishonest or prejudiced. *See Logan v. Kautex Textron N. Am.,* 259 F.3d 635, 640 (7th Cir.2001).

Next, Ms. Morrison argues that Tyree's policy, by treating her differently because she was a consultant from 1997 to May 2001 instead of a permanent employee, is tantamount to treating her differently because she is African–American, since Panduit hired African–American employees only as consultants during that time. As evidence of company-wide discrimination in hiring African–American permanent employees, she points to Panduit's interrogatory answers that it hired only one African–American person out of 46 applications for the Information Technology department since 1989.

Ms. Morrison's argument that she was the victim of discrimination in hiring is unconvincing. She turned down an offer sometime before December 1999. Furthermore, the district court was correct that statistics from Panduit's interrogatory answers cannot make Ms. Morrison's case. These statistics do not show causation without evidence to eliminate other possible factors. *See Bennett v. Roberts,* 295 F.3d 687, 697 (7th Cir.2002); *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 616–17 (7th Cir.2000). Furthermore, Ms. Morrison's appeal is only about wrongful termination, and, as the district court observed, Ms. Morrison was the only one of five African–Americans fired (or 20%), whereas nine of 51 whites were fired (or 17%), which hardly suggests pretext. None of these arguments raises a reasonable inference of discrimination, or shows that Tyree's reasons were in fact dishonest.

■ Finally, at oral argument, Ms. Morrison argued that a memorandum by Panduit's president directed Panduit's decision-makers not to use the 2000 performance evaluations in determining whom to dismiss in the RIF. The memorandum, she said, was cited by Panduit in the post-summary judgment proceedings. The memo is nowhere in the summary judgment record on appeal, and Ms. Morrison waived the argument by waiting until oral argument to make it. *See Awe v. Ashcroft,* 324 F.3d 509, 512–13 (7th Cir.2003); *Holman v. State,* 211 F.3d 399, 405 & n. 5 (7th Cir.2000).

Arguably, the criteria employed by Panduit could have been fine-tuned, and even the application of those criteria might have been more precise. Nevertheless, Panduit did have a plan in place and did execute the RIF according to that plan. Panduit presented an explanation for its management decisions. Although those decisions might not have been the best possible decisions from a management point of view, Ms. Morrison makes no argument to support a reasonable inference that Panduit's implementation of its policy was so unreasonable as to be pretextual, or that Panduit was trying to cover-up discrimination. *See Koski,* 307 F.3d at 677; *Mills,* 171 F.3d at 458.

For the foregoing reasons, we AFFIRM the judgment of the district court.